UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LUIS ALBERTO R.L.,[1]<br><br>Petitioner,<br><br>v.<br><br>WARDEN OF THE GOLDEN STATE ANNEX, et al.,<br><br>Respondents. | No. 1:26-cv-06016-TLN-CKD<br><br>A# 204-268-152<br><br>**RELEASE ORDER** |

This matter is before the Court on Luis Alberto R.L.'s ("Petitioner") Petition for Writ of Habeas Corpus ("the Petition"). (ECF No. 1.) Respondents filed an Answer. (ECF No. 9.) Petitioner replied. (ECF No. 13.) For the reasons set forth below, the Petition is GRANTED and Respondents are ordered to IMMEDIATELY RELEASE Petitioner.

///

///

[1] The Court omits Petitioner's full name to protect sensitive personal information. *See* Memorandum Re: Privacy Concern Regarding Social Security and Immigration Opinions, Committee on Court Administration and Case Management, Judicial Conference of the United States (May 1, 2018), https://www.uscourts.gov/sites/default/files/18-cv-l-suggestion_cacm_0.pdf.

## I. Factual Background

This matter arises out of Petitioner's constitutional challenge to his civil immigration detention. (ECF No. 1.) Petitioner is a noncitizen who entered the United States without admission in 1999, when he was just four years old. (*Id.* at 9, 17.) For the last 27 years, Petitioner has lived and grown up in this country. (*Id.* at 9.) He established a stable home, lived with his family, joined a religious community, worked to provide for himself and his loved ones, attended school, and raised a family. (*Id.* at 10.) Petitioner states his first memories are in the Unites States. (*Id.* at 11.) Life in this country is "all [he] know[s]." (*Id.*)

In 2012, the government granted Petitioner Deferred Action for Childhood Arrivals ("DACA") status, which expired in 2016. (*Id.* at 15; ECF No. 9 at 2.) In 2020, Petitioner was arrested by U.S. Immigration and Customs Enforcement ("ICE") who initiated removal proceedings against him. (ECF No. 1 at 12; ECF No. 9-3.) Petitioner was released from custody on an ankle monitor and was required to check in monthly with ICE. (ECF No. 1 at 12.) Petitioner asserts he complied with all requirements and the ankle monitor was removed. (*Id.* at 16.) Thereafter, Petitioner was placed under ICE's Intensive Supervision Appearance Program ("ISAP"). (ECF No. 9 at 2; ECF No. 9-2 at 2.)

On March 14, 2026, Petitioner attended an ICE check-in at the Fresno field office. (ECF No. 1 at 17.) Petitioner claims ICE told him they were considering reducing his requirements for ICE check-ins from monthly to annual. (*Id.* at 17, 21.) Instead, ICE arrested Petitioner at the appointment without notice or a hearing. (*Id.* at 2.) The parties disagree as to Petitioner's compliance with the terms of ISAP. (*Id.*; ECF No. 9 at 2.) But there is no evidence of ISAP violations in the record before this Court and there is no evidence that any alleged violations were ever presented before an immigration judge.

Petitioner has now been detained for nearly six months without receiving any custody hearing. (ECF No. 1.) Instead, Petitioner's removal proceedings were accelerated and, on June 30, 2026, an immigration judge ordered Petitioner removed to his country of origin. (ECF No. 9 at 2; ECF No. 9-1.) Petitioner did not timely appeal, thus, his order of removal became final on July 31, 2026. (ECF No. 9-1.) *See also* 8 C.F.R. §§ 1003.38(b) and 1241.1(c). That same day, the

Court received Petitioner's challenge to the lawfulness of his arrest and detention. (ECF No. 1.)

## II. STANDARD OF LAW

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). Accordingly, a district court's habeas jurisdiction includes challenges to immigration detention. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

## III. ANALYSIS

Petitioner claims his detention in March without a pre-deprivation hearing violates the Fifth Amendment Due Process Clause.[2] (ECF No. 1 at 27–28.) Respondents do not engage with Petitioner's constitutional claims regarding his arrest and the first four and a half months of his detention. (*See* ECF No. 9.) Rather, Respondents argue that Petitioner's detention has become mandatory under 8 U.S.C. § 1231(a)(2) because Petitioner is now subject to a final order of removal as of July 31, 2026. (ECF No. 9 at 1.) The Court begins by assessing the legality of Petitioner's initial arrest and detention before determining the effect of Respondents' shifting detention authority.

### A. Fifth Amendment Violation

The Fifth Amendment prohibits government deprivation of an individual's life, liberty, or property without due process of law. U.S. Const. amend. V; *Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017). The Due Process Clause applies to all "persons" within the borders of

---

[2] Finding relief warranted on his Fifth Amendment claim, the Court declines to address Petitioner's additional claims in favor of judicial economy.

the United States, regardless of immigration status. *Zadvydas,* 533 U.S. at 693. These due process rights extend to immigration proceedings and detention. *Id.* at 693–94.

Courts examine procedural due process claims in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution. *See Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989); *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972) ("Once it is determined that due process applies, the question remains what process is due.").

*i. Liberty Interest*

As for the first step, the Court finds Petitioner has a protectable liberty interest. "[F]reedom from imprisonment is at the 'core of the liberty protected by the Due Process Clause.'" *Hernandez*, 872 F.3d at 993 (citing *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992)). "Even where the revocation of a person's freedom is authorized by statute, that person may retain a protected liberty interest under the Due Process Clause." *See Rico-Tapia v. Smith*, No. 25-CV-00379 SASP-KJM, 2025 WL 2950089, at *8 (D. Haw. Oct. 10, 2025). Liberty interest may be strengthened over time. *See, e.g., Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025) (noting the Government's actions in allowing petitioner to remain in the community for over five years strengthened petitioner's liberty interest).

Petitioner has a clear liberty interest here. He has resided in the United States since he was approximately four years old, for 27 years. Moreover, the government released him during the pendency of his removal proceedings. "Governmental actions may create a liberty interest entitled to the protections of the Due Process Clause." *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025) *(citing* Bd. of Pardons v. Allen, 482 U.S. 369, 371 (1987)). Even if he is removable, or his liberty is revocable, his liberty is still protected by due process. *See Hernandez*, 872 F.3d at 993; *Zadvydas*, 533 U.S. at 693. Having found Petitioner has a liberty interest protected by due process, the Court next turns to the procedural safeguards that were owed to Petitioner.

///

*ii. Procedures Required*

As to the second step — what procedures or process is due — the Court considers three factors: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335.

First, as explained above, Petitioner has a substantial private interest in his own liberty that is unquestionably affected by Respondents' actions detaining him. The time that Petitioner spent at liberty — 27 of the 31 years of his life — underscores the gravity of its loss. *See Doe v. Becerra*, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. 2025) ("The lengthy duration of his conditional release as well as the meaningful connections Petitioner seems to have made with his community during that time create a powerful interest for Petitioner in his continued liberty."). Despite his interest in maintaining his liberty, Petitioner has now been detained for over six months, separated from his children, his community, unable to work to pay for a lawyer to seek immigration relief. (ECF No. 1 at 26.) Accordingly, this factor weighs in favor of finding Petitioner's private interest has been impacted by his detention. *See Manzanarez v. Bondi*, No. 1:25-CV-01536-DC-CKD, 2025 WL 3247258, at *4 (E.D. Cal. Nov. 20, 2025) (finding similarly).

Second, the risk of erroneous deprivation is considerable given Petitioner did not receive any hearing, either pre- or post-detention. Because civil immigration detention is "nonpunitive in purpose and effect," a "special justification" must outweigh Petitioner's protected liberty interest in order for detention to comport with due process. *Zadvydas*, 533 U.S. at 690. Where removal is not imminent under a final order of removal, "[t]he government has no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by [ ] bond or alternative conditions." *Hernandez*, 872 F.3d at 994. At the time of Petitioner's arrest in March, he was not subject to an order of removal. Additionally, before releasing Petitioner in 2020,

immigration authorities would have necessarily found that Petitioner was not a danger or such a flight risk that the risk could not be mitigated under the ISAP program. Nor do Respondents now argue that Petitioner was detained because he was a danger or a flight risk. (*See* ECF No. 9.) And even though they reference ISAP violations (of which there is no evidence), that does not justify Respondents' automatic revocation of his release without procedural safeguards before a neutral arbiter. *See E.A.T.B. v. Wamsley*, No. 25-CV-1192-KKE, 2025 WL 2402130, at *4 (W.D. Wash. Aug. 19, 2025) ("It does not necessarily follow that Petitioner can be detained for [missed check-in] violations without a hearing. That the Government may believe it has a valid reason to detain petitioner does not eliminate its obligation to effectuate the detention in a manner that comports with due process.").

Moreover, Respondents did not comply with the procedural requirements of 8 U.S.C. § 1226(a), which governed Petitioner's detention. Individuals like Petitioner who are "present without admission who are apprehended in the interior of the United States" are subject to discretionary detention under 8 U.S.C. § 1226(a). *Rodriguez Vazquez v. Bostock*, 2026 WL 2196424, at *3 (9th Cir. July 30, 2026). Section 1226(a) provides "extensive procedural protections" including several layers of review of the initial custody determination, "an initial bond hearing before a neutral decisionmaker, the opportunity to be represented by counsel and to present evidence, the right to appeal, and the right to seek a new hearing when circumstances materially change." *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1202 (9th Cir. 2022). Here, there is no evidence of a warrant or initial custody determination, despite this Court's Order to file such documents in the record,[3] and Petitioner was not provided a custody hearing. Thus, Respondents failed to provide the procedural safeguards statutorily owed to Petitioner. Without any safeguards, the probative value of additional procedural safeguards is high. *R.D.T.M.*, 2025 WL 2617255, at *4.

Finally, the government's interest in detaining Petitioner without proper notice and

---

[3] The Court ordered Respondents to file with their Answer "any custody determinations, warrants or notices" for Petitioner. (ECF No. 7.) Respondents did not file any such documents. (*See* ECF No. 9.)

hearing is low, and the effort and cost required to provide Petitioner with such procedural safeguards are minimal. *See Garcia v. Andrews*, No. 2:25-CV-01884-TLN-SCR, 2025 WL 1927596, at *5 (E.D. Cal. July 14, 2025). Custody hearings are routine processes for Respondents. Indeed, they are the very process owed to Petitioner under 8 U.S.C. § 1226(a). Any burden associated with the provision of these processes is negligible and does not outweigh Petitioner's liberty interest and the risk of erroneous deprivation. Nor do Respondents claim they would be unduly burdened.

Under the *Mathews* factors, the Court finds Respondents were required to provide notice and a pre-deprivation hearing before a neutral decisionmaker. The U.S. Supreme Court "usually has held that the Constitution requires some kind of a hearing *before* the State deprives a person of liberty or property." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990) (emphasis in original). The Court describes post-deprivation remedies as the "special case" where those are "the only remedies the State could be expected to provide." *Id.* at 129. Respondents have not provided any substantive opposition to the contrary, nor do they argue that Petitioner should be a "special case." (*See* ECF No. 9.)

Respondents' failure to provide any custody hearing over four and a half months deprived Petitioner of an opportunity to be heard "at a meaningful time and in a meaningful manner." *Mathews*, 424 U.S. at 333 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965) (citing *Grannis v. Ordean*, 234 U.S. 385, 394 (1914))). Therefore, Petitioner was detained in violation of the Fifth Amendment.

B. <u>After-Acquired Detention Authority and Remedy</u>

Respondents' detention authority under 8 U.S.C. § 1231(a)(2), acquired nearly four and a half months into Petitioner's detention, does not retroactively cure Respondents' due process violations. Petitioner's constitutional claim does not evaporate with a shifting basis for statutory authority. *See Alvarenga Matute v. Wofford*, No. 1:25-CV-01206-KES-SKO, 2025 WL 2996577, at *4 (E.D. Cal. Oct. 24, 2025) (A "change in the applicable statutory authority [for detention] does not render moot petitioner's due process claim"); *Doe v. Becerra*, 697 F. Supp. 3d 937, 943 (N.D. Cal. 2023) ("[J]ust as the "shall" in [§] 1226 gives way to as-applied due process

challenges, so too must the 'shall' in [§] 1231(a)." (citing *Demore v. Kim*, 538 U.S. 526 (2003); *Nielsen v. Preap*, 586 U.S. 392 (2019); *Hernandez Gomez v. Becerra*, No. 23-cv-01330-WHO, 2023 WL 2802230, at *3 (N.D. Cal. Apr. 4, 2023))). To find otherwise would reward Respondents' continuous and deliberate campaign to flout due process.

Having found egregious due process violations, the Court finds standard habeas relief is still appropriate here even though the government may now detain Petitioner to effect his removal. *See Munaf v. Geren*, 553 U.S. 674, 693 (2008) (citing *Hamdi v. Rumsfeld*, 542 U.S. 507, 536 (2004)) ("Habeas is at its core a remedy for unlawful executive detention . . . [and] [t]he typical remedy for such detention is, of course, release."). At a minimum, release from custody will give Petitioner some time to arrange his affairs for removal. The Court acknowledges that risk of flight may increase at this stage of removal proceedings, therefore, Respondents may elect to place Petitioner on electronic monitoring until such time as they seek to effectuate his removal lawfully.

## IV. CONCLUSION

Accordingly, the Petition for Writ of Habeas Corpus (ECF No. 1) is GRANTED. Further, IT IS HEREBY ORDERED:

1. Respondents must IMMEDIATELY RELEASE Petitioner Luis Alberto R.L. (A# 204-268-152) from custody. At the time of release, Respondents must return all of Petitioner's documents and possessions. Respondents must file a **notice of compliance** with this Order by **October 12, 2026.**

2. Respondents are ENJOINED from re-detaining Petitioner absent compliance with statutory and constitutional protections, including a minimum of ten-days' pre-deprivation notice (which shall not issue prior to date of Petitioner's release) and strict compliance with the requirements of 8 C.F.R. §§ 241.13(i), 241.4(l).

3. Petitioner's Motion for Temporary Restraining Order (ECF No. 2) is DENIED as moot.

4. The Clerk of Court is directed to serve this Order on the **Golden State Annex**, enter judgment in favor of Petitioner, and close this case.

IT IS SO ORDERED.

DATE: October 7, 2026

TROY L. NUNLEY
CHIEF UNITED STATES DISTRICT JUDGE